SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

## Rolando Fernandes v. DAR Development Corp. (A-37-13) (073001)

**Argued October 7, 2014 -- Decided July 28, 2015**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers whether the comparative negligence of an employee injured in a workplace accident may be submitted to the jury.

In October 2004, as Rolando Fernandes (plaintiff) and his boss, Mario Freitas (Mario) were installing a sewer pipe at a residential construction site, the wall of the trench in which they were working collapsed, burying plaintiff to his chest. Plaintiff filed a complaint against the general contractor, DAR Development Corp. and DAR Construction, Inc. (collectively DAR or defendant), seeking compensatory damages. The parties agreed that the accident would not have occurred had the trench been outfitted with safety devices, but disputed whether DAR or plaintiff's employer, C. Freitas Plumbing and Heating, Inc. (Frietas), bore the responsibility for taking those precautions.

At trial, plaintiff testified that, throughout his career, he had completed numerous pipe installations and that Freitas did not utilize trench protection systems. On cross-examination, he acknowledged that, at his deposition, he had testified that Freitas did use trench protection in some places. Plaintiff explained this contradiction by specifying that Freitas never had a trench box, but rather used a brace constructed of plywood to prevent cave-ins. Mario testified that, more than a year before the accident, Freitas had purchased three sets of trench boxes certified by the Occupational Safety and Health Administration (OSHA). Thereafter, Freitas conducted employee meetings regarding trench safety and proper use of the boxes. On cross-examination, Mario admitted that he had no formal OSHA training, acknowledged that Freitas had no established health and safety protocol, and asserted that DAR did not require one.

Plaintiff's expert testified that DAR was the controlling employer on the jobsite, and was, therefore, required to hire safe subcontractors, ensure that subcontractors designated a competent person to enforce OSHA regulations, and monitor the work for safety compliance. The expert opined that DAR increased its profits by hiring unscrupulous subcontractors who did not adhere to OSHA standards. Defendant's expert testified that as the sewer trench approached the house, it converged with an area previously excavated to permit installation of a gas line. The gas line trench, which was approximately two to three feet wide, was backfilled with sand to support the line and prevent it from rupturing. He opined that plaintiff's accident occurred because the sewer trench came too close to the gas line trench.

At the charge conference, DAR requested a comparative negligence charge. Plaintiff responded that, as a matter of public policy, comparative negligence had no place in a workplace injury trial dealing with injuries sustained by a worker while performing his assigned task. He also claimed that the evidence did not suggest that he proceeded unreasonably in the face of a known risk. The trial court denied DAR's request and the jury returned a unanimous verdict in favor of plaintiff.

Defendant appealed, asserting that the trial court's refusal to charge comparative negligence constituted reversible error. In an unpublished opinion, the Appellate Division determined that the trial court properly denied a comparative negligence charge because defendant "failed to present competent evidence that at the time of the accident, plaintiff voluntarily and unreasonably proceeded in the face of a known danger -- which is the standard against which an injured construction worker's conduct is measured." In reaching that conclusion, the Appellate Division cited Kane v. Hartz Mountain Industries, Inc., 278 N.J. Super. 129 (App. Div. 1994), aff'd o.b., 143 N.J. 141 (1996), and Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979) and its progeny, a line of cases traditionally applied to products liability matters. Defendant petitioned for certification, limited to the comparative negligence issue. This Court granted defendant's petition. 216 N.J. 86 (2013).

**HELD**: In negligence claims by injured workers against third parties, there is no sound reason to depart from settled precedent that an employee's negligence may be submitted to the jury when evidence has been adduced that the injured employee unreasonably confronted a known risk and had no meaningful choice in the manner in which he completed the task. Here, the evidence produced at trial provided no basis to submit the issue of plaintiff's negligence to the jury.

1. To prevail on a claim of negligence, a plaintiff must establish: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages. In ordinary negligence

actions it is sufficient for the plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury, which is competent to determine what precautions a reasonably prudent man in defendant's position would have taken. However, where the collective experience of the jury is not sufficient to measure the defendant's conduct, the plaintiff must establish the standard of care governing the defendant's conduct and the deviation from that standard through reliable expert testimony. Claims involving workplace accidents commonly fall into the category in which the plaintiff must produce reliable expert testimony to establish the standard of care and to explain how the defendant's actions departed from that standard. (pp. 16-18)

2. OSHA has promulgated mandatory occupational safety and health standards to help ensure safe working conditions for all employees. Relevant in this appeal, the regulations permit general contractors and subcontractors to make their own agreements with regard to the division of labor. OSHA has also adopted regulations that specifically govern excavations, including trenches associated with the installation of utilities. OSHA regulations are pertinent in determining the nature and extent of any duty of care, however, a violation of such a standard is no more than evidence of negligence. Noncompliance with an industry standard does not conclusively establish negligence. (pp. 18-19)

3. Under common law, a defendant could raise a plaintiff's contributory negligence as an affirmative defense to liability. This doctrine served to bar recovery by a plaintiff whose fault, no matter how slight, contributed to the accident. In 1973, the Legislature adopted the Comparative Negligence Act (the CNA) to reduce the harshness of the contributory negligence doctrine. Under the theory of comparative negligence, the injured party is permitted to recover if his or her negligence was not greater than the negligence of the person against whom recovery is sought, or the combined negligence of the persons against whom recovery is sought. This rule extends to an employee who is injured in a workplace accident and sues a third person in an ordinary negligence action. A jury may consider a plaintiff's negligence only when the evidence adduced at trial suggests that the plaintiff was somehow negligent and that negligence contributed to the plaintiff's damages. (pp. 19-23)

4. In Suter, this Court held that a plaintiff's comparative negligence could not be considered when the plaintiff, an employee in an industrial setting, was injured while using a defective machine in an intended or reasonably foreseeable manner. In Kane, the Appellate Division rejected the contention that Suter and its progeny bar submission of an injured employee's negligence actions against third parties. Nevertheless, plaintiff argues that this Court should extend the Suter rule to negligence actions based on workplace injuries at large. The principles of Suter remain sound as applied to cases in which an employee is injured when using a defective piece of equipment in a reasonable and foreseeable manner to complete his assigned task. The Court expressly affirms Kane and disapproves of the Appellate Division's analysis of the issue in this appeal to the extent it suggests that the Suter rule applies to bar the comparative negligence defense in all cases arising out of injuries sustained while an employee is engaged in a task on his employer's behalf. A catalog of industry standards and government regulations address the standard of care on various worksites and prescribe safety standards for specific activities, such as excavations to install utilities. To that end, an employer performing excavation work is required to take measures to protect employees. However, unlike the manufacturer of an industrial machine, who has an absolute duty to produce a machine that is safe to operate, a general contractor is expected to protect its workers from the myriad of potential dangers encountered on a construction site so far as possible. The vast discrepancy between the level of control asserted by the manufacturer of an industrial machine and that of a general contractor on a construction site mandates that the result of this case be different from that in Suter. (pp. 23-27)

5. The relevant inquiry in gauging the level of an employee's responsibility for his or her injuries is whether he or she failed to use the care of a reasonably prudent person under all of the circumstances, either in continuing to work in the face of a known risk or in the manner in which he or she proceeded in the face of that known risk. The issue of a plaintiff's negligence may only be submitted to the jury when the evidence adduced at trial suggests that a worker acted unreasonably in the face of a known risk and that conduct somehow contributed to his or her injuries. The fact that plaintiff was a member of the workforce, with all the compulsions attendant to that status, is a factor which is subsumed in the jury's analysis of whether he acted prudently. The jury should also consider the effect of the plaintiff's expertise and training on his or her determination of whether to proceed with the assigned task and the manner in which to do so. Notwithstanding the rule permitting an employee's negligence to be considered in a negligence action against a third party arising from a workplace accident, the trial judge here properly rejected defendant's request for a comparative negligence charge because there is no evidence that plaintiff failed to act with the care of a reasonably prudent person in choosing to complete his assigned task on the day of the accident. (pp. 28-30)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUDGE CUFF's opinion.**

ROLANDO FERNANDES,

    Plaintiff-Respondent,

        v.

DAR DEVELOPMENT CORP. and DAR
CONSTRUCTION, INC.,

    Defendants-Appellants.


        Argued October 7, 2014 – Decided July 28, 2015

        On certification to the Superior Court,
        Appellate Division.

        Joseph K. Cobuzio argued the cause for
        appellant (Tompkins, McGuire, Wachenfeld &
        Barry, attorneys; Mr. Cobuzio, Matthew P.
        O'Malley, and Jared P. DuVoisin, on the
        briefs).

        Gerald H. Clark argued the cause for
        respondent (Clark Law Firm, attorneys; Mr.
        Clark and William S. Peck, on the letter
        brief).

        Bruce H. Stern argued the cause for amicus
        curiae New Jersey Association of Justice
        (Stark & Stark, attorneys; Mr. Stern and
        Michael G. Donahue, on the brief).

    JUDGE CUFF (temporarily assigned) delivered the opinion of

the Court.

As plaintiff Rolando Fernandes and his boss, Mario Freitas (Mario),[1] were installing a sewer pipe on a residential construction site, the wall of the trench in which Fernandes was working collapsed, burying him up to his chest. Mario promptly extricated plaintiff and later drove him home. Fernandes was seriously injured and has not worked since that day.

Fernandes filed a complaint against the general contractor, DAR Development Corp. and DAR Construction, Inc. (collectively DAR or defendant), seeking compensatory damages. At trial, the court rejected defendant's request to charge comparative negligence. The jury returned a verdict in favor of plaintiff.

In resisting defendant's request to charge Fernandes' negligence, plaintiff invoked Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979), to argue that a worker's negligence should not be submitted to the jury in negligence claims by an injured worker against third parties, such as a general contractor. He also argued that the record provided no evidential support for a comparative negligence charge.

The Appellate Division affirmed the decision by the trial court refusing to submit the issue of plaintiff's negligence to the jury. In doing so, the appellate panel invoked not only the leading authority on negligence claims by injured workers

---

[1] We refer to Mario Freitas by his first name to avoid confusion. We intend no disrespect by this practice.

arising from workplace accidents against third parties, but also authority governing workplace accidents involving unsafe or defectively designed equipment. The Appellate Division's analysis of the comparative negligence issue requires this Court to determine whether the negligence of an employee injured in a workplace accident may be submitted to the jury.

We conclude that in negligence claims by injured workers against third parties, such as a general contractor, there is no sound reason to depart from settled precedent that an employee's negligence may be submitted to the jury when evidence has been adduced that the injured employee unreasonably confronted a known risk and had no meaningful choice in the manner in which he completed that task. We also determine, like the Appellate Division, that in this case the evidence produced at trial provided no basis to submit the issue of Fernandes' negligence to the jury.

I.

A.

The following facts are derived from evidence adduced at trial. On October 9, 2004, plaintiff was working at a residential construction site in Warren. DAR was the general contractor on the project; plaintiff's employer, C. Freitas Plumbing and Heating, Inc. (Freitas), was the plumbing subcontractor. DAR and Freitas had a well-established

3

relationship; between 2002 and 2004, DAR awarded contracts for nearly 100 percent of its excavation work to Freitas.

Construction of the home required digging an approximately 700-foot-long trench (the sewer trench) that extended from the home to the street. The two-and-one-half-foot wide and approximately five-foot deep trench included a makeshift stairwell to enable workers to enter and exit the trench easily. It is undisputed that plaintiff and Mario, the president of Freitas, arrived at the jobsite together. At the time of the accident, plaintiff was connecting sewer pipes inside the trench while Mario used a backhoe to excavate the trench. As plaintiff climbed the staircase, the trench collapsed, burying him chest-high in dirt and stones. Plaintiff was seriously injured and unable to continue working. Mario drove him home and picked up plaintiff's son Andre, also an employee of Freitas, to finish work at the jobsite.

The parties agreed that the accident would not have occurred had the trench been outfitted with safety devices designed to prevent a collapse. The central dispute at trial was whether DAR or Freitas bore the responsibility for taking those precautions. Plaintiff presented evidence that DAR violated regulations promulgated pursuant to the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C.A. §§ 651 to -78, which required a general contractor to prevent cave-ins by

4

installing a trench protection system known as a trench box.  In response, DAR presented evidence that plaintiff was an experienced trench worker who was well aware of both the hazards associated with excavation and the necessary safety precautions.

Plaintiff testified that he began working for Freitas when he moved to the United States in 2001.  Prior to that, plaintiff spent nineteen years working as a plumber in his native country.  Throughout his career, plaintiff completed "hundreds if not thousands" of pipe installations.  He acknowledged his familiarity with the hazards associated with excavation work.

Plaintiff initially testified that Freitas did not utilize trench protection systems, and that such a system was unavailable to him at the time of his accident.  However, on cross-examination, plaintiff acknowledged that, at his deposition, he testified that Freitas used trench protection in "some places" and that plaintiff himself had utilized protective measures on "many" occasions.  At trial, plaintiff explained this contradiction by specifying that Freitas "never had a trench box."  Rather, Freitas utilized a brace constructed of two sheets of plywood separated by hydraulic stretchers to prevent cave-ins.  Plaintiff stated that sometimes the workers would be responsible for deciding whether to use the protective system if it had been brought to the jobsite.  He admitted that

if he "left in the morning with the box and if [he] had it with him when [he] got to work, [he] would use [it]."

One such occasion when plaintiff could have chosen to use trench protection was at the Warren jobsite during the four- or five-day period prior to his accident. During that period, plaintiff used a backhoe to excavate the trench while other workers connected pipes inside the trench. Plaintiff testified that he did not elect to use a trench protection system on those days. However, on re-direct, plaintiff clarified that Mario was ultimately responsible for deciding whether to employ trench protection. Counsel read into the record a portion of plaintiff's deposition testimony stating that he hesitated to make "too many suggestions" because he feared he would be fired.

Mario testified that in August 2003, Freitas purchased three sets of trench boxes certified by the Occupational Safety and Health Administration (OSHA). Thereafter, Freitas conducted employee meetings regarding trench safety and proper use of the boxes. Plaintiff attended those meetings. Mario testified that, although the Act only required the use of trench systems in locations where the trench was deeper than five feet, his company also employed protective measures in sections of trench that were considered unstable, regardless of their depth. Mario disputed plaintiff's assertion that plaintiff would be fired if he requested that trench protection be used on a particular

6

project, explaining that like every Freitas employee, plaintiff was responsible for determining when it was necessary to employ a trench box. Mario instructed his workers to take the trench boxes to their jobsites on a daily basis, and all of the workers were aware of the importance of using trench protection.

On cross-examination, Mario admitted that he had no formal OSHA training. He acknowledged that Freitas had no established health and safety protocol and asserted that DAR did not require one. DAR made no inquiries to him about Freitas' safety protocol, did not request a breakdown of the amount of money earmarked for such concerns, and did not conduct OSHA training on DAR-Freitas jobsites. No one from DAR had ever addressed safety protocol with Mario.

Norberto Jean Salle, DAR's project manager for the Warren jobsite, testified that he was the highest authority on safety at the site and was onsite daily. Like Mario, Jean Salle had not received OSHA training, although he had received construction safety training while studying to become an architect in Argentina. Jean Salle confirmed that DAR did not have a written health or safety program or conduct safety meetings on the Warren jobsite, although it did provide subcontractors with verbal instructions about necessary safety precautions.

7

Evidence presented at trial suggested that the trench was between four feet and five feet, eight inches deep at the point of collapse. Mario testified that he examined the trench on the morning of plaintiff's accident and determined that protective measures were not necessary because "the dirt . . . was good." Jean Salle also concluded that a collapse was unlikely.

Vincent Gallagher testified on behalf of plaintiff as an expert in the field of construction site safety management and OSHA compliance. According to Gallagher, in accordance with OSHA regulations, DAR was the "controlling employer" on the Warren jobsite. As such, DAR was required to hire "safe" subcontractors, to ensure that subcontractors designated a "competent person" to enforce OSHA regulations, and to monitor the work to ensure it was being performed in a safe manner.

Gallagher opined that DAR increased its profits by regularly hiring unscrupulous subcontractors who did not adhere to OSHA standards. In support of this conclusion, Gallagher referenced deposition testimony by a Freitas employee uninvolved in this litigation, who testified that he had worked in more than one hundred trenches on DAR-Freitas projects, that all were deeper than five feet, and that trench boxes were never used. Plaintiff's son Andre, who had worked on five to ten DAR-Freitas projects, testified that the excavations in those projects had at times required digging deeper than five feet and that trench

8

boxes were not used. Based on those depositions, Gallagher concluded that it was "very common" for workers on DAR-Freitas projects to conduct excavation work without suitable protection.

Gallagher opined that the trench in this case was likely to collapse and cause injury for two reasons. First, the trench was excavated out of fill soil. Unlike virgin earth, which hardens over time, fill soil has "loose compaction," which makes it prone to collapse. Second, because the two-and-one-half-foot wide trench was "narrow" it was more likely to cause serious injury upon collapse. Gallagher relied on deposition testimony of one of Freitas' employees, who testified that fifteen to twenty cave-ins had occurred in the sewer trench in the four days prior to plaintiff's injury.

Defendant's construction safety and civil engineering expert, Timothy Carlson, testified that as the sewer trench approached the house, it converged with an area previously excavated to permit installation of a gas line. The gas-line trench, which was approximately two-to-three-feet wide, was backfilled with sand in order to support the line and prevent it from rupturing. Carlson noted that, unlike clay, sand flows when disturbed. He opined that plaintiff's accident occurred because the sewer trench came too close to the gas-line trench, causing the sand from the gas-line trench to flow into the sewer

trench.  The flowing sand weakened the walls of the sewer trench, causing the collapse.

Carlson also referred to OSHA regulations.  He testified that there are two critical aspects to OSHA's excavation standards: first, identification of a "competent person," who is able to "recognize a hazard and has the authority to do something about it," and second, mandatory use of a trench protection system in an excavation deeper than five feet.  He agreed that when excavating a trench less than five-feet deep, the competent person is responsible for determining whether protective measures are necessary.  Carlson opined that Mario was the competent person on the Warren jobsite.  On cross-examination, Carlson admitted that, although OSHA training would be helpful to the competent person, the regulations did not require it.  He reiterated that Mario was the competent person on the jobsite despite Mario's admitted lack of OSHA training.

On cross-examination, Carlson testified that typically, general contractors on residential jobs do not conduct safety meetings on the jobsite.  Carlson opined that, as the general contractor, DAR did not have a responsibility to ensure that each subcontractor's employees received safety training.  Carlson stated that it was the responsibility of Freitas to train its workers to complete their assigned tasks safely.  Despite this statement, Carlson acknowledged that, in accordance

with the Act, a general contractor has a non-delegable duty to ensure the safety of a workplace.

At the charge conference, DAR requested a comparative negligence charge. It asserted that the jury should be permitted to consider plaintiff's negligence based on his entry into the trench on the day of the accident, which DAR reasoned was unreasonable conduct in light of plaintiff's extensive excavation experience, his understanding of the hazards associated with trench excavation, and his occasional responsibility for deciding when it was necessary to use trench protection. Plaintiff's response to this request was two-fold. First, he contended that as a matter of public policy comparative negligence has no place in a workplace injury trial dealing with injuries sustained by a worker while performing his assigned task. Second, the evidence adduced at trial did not suggest that plaintiff unreasonably proceeded in the face of a known risk or was "horsing around."

The trial court denied DAR's request, concluding that the record was devoid of evidence suggesting that plaintiff entered the trench despite knowing it was unsafe. In its charge, the trial court instructed the jury that a general contractor has a non-delegable duty to maintain a safe workplace. The court informed the jury that a general contractor must exercise reasonable care under general negligence principles to protect

11

its workers -- and those of its subcontractors -- from foreseeable harm. The court also instructed the jury that noncompliance with construction safety standards promulgated by the construction industry and OSHA may be considered evidence of negligence but that those standards did not conclusively establish negligence on the jobsite.

The jury returned a unanimous verdict in favor of plaintiff awarding damages of $792,000.

### B.

Defendant appealed, asserting that the trial court's refusal to charge comparative negligence constituted reversible error. In an unpublished opinion, the Appellate Division determined that the trial court properly denied a comparative negligence charge because defendant "failed to present competent evidence that at the time of the accident, plaintiff voluntarily and unreasonably proceeded in the face of a known danger -- which is the standard against which an injured construction worker's conduct is measured." In reaching that conclusion, the Appellate Division cited Kane v. Hartz Mountain Industries, Inc., 278 N.J. Super. 129 (App. Div. 1994), aff'd o.b., 143 N.J. 141 (1996), and Suter and its progeny, a line of cases traditionally applied to products liability matters.

Defendant petitioned for certification, limited to the comparative negligence issue. This Court granted defendant's

12

petition, 216 <u>N.J.</u> 86 (2013), and permitted the New Jersey Association of Justice (NJAJ) to appear as amicus curiae.

## II.

Defendant asserts that the Appellate Division erred by applying <u>Suter</u> in its analysis of the availability of a comparative negligence instruction in this case. In <u>Suter</u>, <u>supra</u>, this Court held that a plaintiff's comparative negligence could not be considered when the plaintiff, an employee in an industrial setting, was injured while using a defective machine in an intended or reasonably foreseeable manner. 81 <u>N.J.</u> at 167. Defendant contends that the <u>Suter</u> rule applies only in products liability cases, and that the Appellate Division's extension of the <u>Suter</u> rule to this case contradicts <u>Kane</u>, <u>supra</u>, 278 <u>N.J. Super.</u> at 150.

In relying on <u>Kane</u>, defendant argues that the jury should have been permitted to consider whether plaintiff used the care of a reasonably prudent person in entering the trench without safety equipment. Defendant asserts that it is fundamentally unfair for it to be found negligent for failing to recognize that the trench was at risk of collapse without allowing the jury to consider whether plaintiff, who had more than twenty years of construction experience and acknowledged his

13

familiarity with the dangers associated with excavation, should also reasonably have recognized that risk.

Plaintiff argues that the trial court correctly removed the issue of plaintiff's negligence from the jury. Plaintiff asserts that there was no evidence from which a reasonable juror could have concluded that he knowingly, deliberately, and unreasonably proceeded in the face of a known danger. Plaintiff contends that there was no evidence to suggest that he failed to use the degree of care of a reasonably prudent person under all the circumstances of this case, either in incurring a known risk or in the manner in which he proceeded in the face of that risk. Instead, plaintiff emphasizes that the trench collapsed while it was being excavated by his boss and plaintiff was performing his assigned task of connecting pipes under his boss's direct supervision. Accordingly, plaintiff asserts that the trial court correctly concluded that there was no evidence to support a comparative negligence charge.

Moreover, plaintiff argues that the Suter rule should be invoked in all workplace injury cases against third parties. Plaintiff contends that Suter has consistently been interpreted broadly to bar a third-party defendant from asserting comparative negligence in claims raised by a plaintiff who sustained a workplace injury.

14

Amicus NJAJ urges this Court to extend the rule in Suter to prohibit the comparative negligence defense in construction worksite cases where the injured worker had no "meaningful choice" but to work under hazardous conditions. In light of the non-delegable duty of a general contractor to maintain safe working conditions, amicus asserts that workers should not be held responsible for their failure to discover hazards and dangers resultant from the contractor's breach of that duty. Amicus also argues that workers who continue to work in recognized hazardous conditions should not be barred from recovering for injuries sustained as a result of those conditions in situations where the worker's only choice was to continue working or be fired. Amicus urges this Court to distinguish this case from Kane, where the plaintiff was injured after choosing not to utilize available personal safety equipment. Amicus insists that plaintiff had no meaningful choice of whether to work in hazardous conditions. Rather, he had two options on the day of the accident -- climb into the trench and perform his assigned task or be fired. Finally, amicus asserts that comparative negligence should not apply when a plaintiff's injury results from a defendant's breach of a statute specifically designed for the protection of workers.

III.

A.

To prevail on a claim of negligence, a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citing Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). Ordinarily, the plaintiff bears the burden of proving the defendant's negligence and that such negligence was the proximate cause of the plaintiff's injury. Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 95 (1999). "To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others." Weinberg v. Dinger, 106 N.J. 469, 484 (1987) (citing People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246, 267 (1985)). The "[a]bility to foresee injury to a potential plaintiff does not in itself establish the existence of a duty, but it is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc., 135 N.J. 182, 194 (1994) (internal citation omitted).

In ordinary negligence actions, the plaintiff is not required to establish the applicable standard of care. Rather, "'[i]t is sufficient for [the] plaintiff to show what the

16

defendant did and what the circumstances were.  The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken.'"  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406-07 (2014) (alterations in original) (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)).

As we explained in Davis, supra, cases in which the defendant is not obliged to identify the standard of care are those "involv[ing] facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'"  Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).  In some cases, however, the collective experience of the jury is not sufficient to measure the defendant's conduct.  See Sanzari, supra, 34 N.J. at 134-35.  In those cases, the plaintiff must establish the standard of care governing the defendant's conduct and the deviation from that standard through reliable expert testimony.  Davis, supra, 219 N.J. at 407.  Claims involving workplace accidents commonly fall into the category in which the plaintiff must produce reliable expert testimony to establish the standard of care and to explain how the defendant's actions departed from that

17

standard.  Costantino v. Ventriglia, 324 N.J. Super. 437, 442 (App. Div. 1999), certif. denied, 163 N.J. 10 (2000).

The standard of care is derived from many sources, including codes adopted by the Legislature, regulations adopted by state and federal agencies, and standards adopted by professional organizations.  OSHA was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions" by "encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment."  29 U.S.C.A. § 651(b)(1).  As authorized by Congress, 29 U.S.C.A. § 655(a), OSHA has promulgated mandatory occupational safety and health standards to further this goal.  See generally Labor, 29 C.F.R. §§ 1902-1990 (2014).  Those regulations impose general standards governing construction sites and standards specific to excavations.  Safety and Health Regulations for Construction, 29 C.F.R. § 1926 (2014); Excavations, 29 C.F.R. § 1926(P) (2014).

Relevant to the facts of this appeal, the regulations permit general contractors and subcontractors to make their own agreements with regard to the division of labor, however, "[i]n no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract."  Rules of Construction, 29 C.F.R. § 1926.16 (2014).  OSHA has also adopted

regulations that specifically govern excavations, including trenches associated with the installation of utilities. Specific Excavation Requirements, 29 C.F.R. § 1926.651(b) (2014).  This Court has determined that "OSHA regulations are pertinent in determining the nature and extent of any duty of care"; however, a violation of such a standard is no more than evidence of negligence, "if the plaintiff is a member of the class for whose benefit the standard was established."  Alloway v. Bradlees, Inc., 157 N.J. 221, 236 (1999) (citing J.S. v. R.T.H., 155 N.J. 330, 349 (1998); Carrino v. Novotny, 75 N.J. 355, 359 (1979)).  Similarly, noncompliance with an industry standard does not conclusively establish negligence. Wellenheider v. Rader, 49 N.J. 1, 7 (1967).

### B.

Under the common law, a defendant could raise a plaintiff's contributory negligence as an affirmative defense to liability. Ostrowski v. Azzara, 111 N.J. 429, 436 (1988).  This doctrine served to bar recovery by a plaintiff whose fault, no matter how slight, contributed to the accident.  Id. at 436.  "Fault in that context meant a breach of a legal duty that was comparable to the duty of the other actors to exercise such care in the circumstances as was necessary to avoid the risk of injury incurred."  Id. at 436-37.

19

In 1973, the Legislature adopted the Comparative Negligence Act (the CNA), N.J.S.A. 2A:15-5.1 to -5.13. The purpose of the CNA was to "ameliorate the harshness of the common-law contributory negligence doctrine." Waterson v. Gen. Motors Corp., 111 N.J. 238, 267 (1988); see also Release from Office of the Governor, May 24, 1973 (commenting that "[n]o longer will a seriously [injured] person be prevented from obtaining compensation for his injuries merely because he was partially responsible, in a minor way, for the accident in which he was injured"). "Comparative negligence, thus, grew out of an 'equitable desire to mitigate the unfairness associated with the total bar to recovery posed by common law contributory negligence.'" Waterson, supra, 111 N.J. at 267 (quoting Suter, supra, 81 N.J. at 161). A second underlying principle of the CNA is the idea that "every person has an obligation to exercise reasonable care for his or her own safety. It is only fair that each person only pay for injuries he or she proximately caused." Ibid.

The CNA requires the finder of fact in any negligence action to determine "[t]he extent, in the form of a percentage, of each party's negligence or fault." N.J.S.A. 2A:15-5.2(a)(2). The injured party is permitted to recover if his or her "negligence was not greater than the negligence of the person against whom recovery is sought or . . . the combined negligence

20

of the persons against whom recovery is sought." N.J.S.A. 2A:15-5.1. If the injured party is permitted to recover, his or her damages will be "diminished by the percentage sustained of negligence attributable" to that individual. Ibid.

This rule extends to an employee who is injured in a workplace accident and "sues a third person in an ordinary negligence action." Kane, supra, 278 N.J. Super. at 150. In Kane, an experienced ironworker was severely and permanently injured while erecting the structural steel frame of a warehouse. Id. at 134. The day of the accident was cold and rainy. Id. at 136. The weather deteriorated during the morning, causing work to cease after the lunch break. Ibid. The plaintiff and his foreman climbed the partially erected structure to retrieve their tools and to secure the site. Ibid. The plaintiff was sitting on a steel beam when a strap attached to a column snapped, causing him to lose his balance and fall to the ground. Ibid. No safety nets had been installed at the site, and the plaintiff was not wearing a safety belt. Id. at 137. The parties disputed whether safety belts were available at the worksite. Ibid.

On appeal, the Appellate Division reversed and ordered a new trial because the jury had been improperly instructed on the standard of care owed by the general contractor and the structural steel subcontractor. Id. at 143. In contemplation

21

of another trial, the appellate panel addressed and rejected the plaintiff's argument that the trial court erred by submitting the issue of his negligence to the jury. Id. at 149. The plaintiff maintained that Suter precluded the submission of this issue to the jury. Ibid.

The Appellate Division summarized the rule permitting submission of an employee's negligence if an employee sues a third party in a negligence action as follows:

> It is well established that an employee's contributory negligence is generally available as a defense when the employee sues a third person in an ordinary negligence action. See 2B Larson's Workmen's Compensation Law, § 75.21 at 14-572 (1989). Further, plaintiff being a member of the workforce, with all the compulsions attendant to that status, is a factor which is subsumed in the jury's analysis of whether he acted prudently, and the jury may be so instructed. See McGrath v. American Cyanamid Co., 41 N.J. 272, 275 (1963) (a man who must work to live is not necessarily negligent whenever he continues to work after learning of a hazard; the inquiry is whether he failed to use the care of a reasonably prudent person under all of the circumstances either in incurring the known risk (i.e., staying on the job) or in the manner in which he proceeded in the face of that risk). In addition, plaintiff would not be barred from recovery by virtue of contributory negligence if "such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought." N.J.S.A. 2A:15-5.1.
>
> [Id. at 150-51.]

22

This Court affirmed without opinion. 143 N.J. 141.

A jury may consider a plaintiff's negligence only when the evidence adduced at trial suggests that the plaintiff was somehow negligent and that negligence contributed to the plaintiff's damages. Roman ex rel. Roman v. Mitchell, 82 N.J. 336, 343 (1980) (affirming determination that there was "sufficient evidence of [plaintiff's] contributory negligence to submit that issue to the jury pursuant to the comparative negligence statute," where evidence adduced at trial revealed that infant plaintiff, who had been riding his bicycle on New Jersey Turnpike, was injured when wheel separated from dump trunk careened across highway and struck plaintiff); Massotto v. Pub. Serv. Coordinated Transp., 71 N.J. Super. 39, 45 (App. Div. 1961) (holding that "[w]hen the evidence discloses that the plaintiff was not guilty of any negligence which contributed to the happening, it is improper and unwarranted to submit the issue of contributory negligence to the jury"). Whenever a party asserts a plaintiff is negligent, the defendant must prove that the plaintiff's negligence contributed to the accident or was a "substantial contributing factor to the injuries sustained." Waterson, supra, 111 N.J. at 252-53.

IV.

A.

Although Kane rejected the contention that Suter and its progeny bar submission of an injured employee's negligence in negligence actions against third parties, plaintiff renews his argument that this Court should extend the Suter rule to negligence actions based on workplace injuries at large. We begin and end our discussion of this argument by reviewing the treatment of this same argument in Kane.

The Appellate Division in Kane considered the issue of whether the plaintiff steelworker's negligence should be submitted for the jury's consideration in the context of an ordinary negligence claim by an employee injured in a workplace accident against the owner of the project and the general contractor. Kane, supra, 278 N.J. Super. at 134. In that context, the appellate court stated that an employee's negligence is "generally available as a defense . . . in an ordinary negligence action," and emphasized that "no decision has applied the Suter rule to a workplace injury not caused by a defective machine or product." Id. at 150.

The Kane panel did not rely simply on the absence of precedent to reject the proposition that an employee's negligence should not be submitted to a jury in a negligence action by an injured worker against a third party. The panel proceeded to highlight the context of Suter and Green v. Sterling Extruder Corp., 95 N.J. 263 (1984), and distinguish

24

those cases from a workplace negligence claim against third parties. Id. at 149-50. The Kane panel emphasized that Suter involved a strict liability action against a machine manufacturer by an employee assigned to work on a piece of machinery without safety devices, id. at 149 (citing Suter, 82 N.J. at 155-57), and that Green involved a negligence action against a machine manufacturer by a factory worker using a defective machine for its foreseeable purpose, id. at 149-50.[2]

Finally, the Kane panel underscored the policy supporting the comparative negligence bar in strict liability actions. The appellate court emphasized that "contributory negligence was not a 'viable defense in a design defect case when . . . an employee in an industrial setting, using the machine in an intended or reasonably foreseeable manner, is injured because of that defect, and in the absence of that defect the injury would not have occurred.'" Id. at 149 (quoting Suter, supra, 81 N.J. at 177).

We decline plaintiff's invitation to extend the Suter rule governing employee negligence to workplace accidents outside the product liability context. The principles of Suter remain sound

_____

[2] The appellate panel also recognized that the Suter rule had been extended to accidents involving equipment other than plant machinery, such as a tractor-trailer. Kane, supra, 278 N.J. Super. at 150 (citing Tirrell v. Navistar Int'l, Inc., 248 N.J. Super. 390, 401 (App. Div.), certif. denied, 126 N.J. 390 (1991)).

as applied to the narrow realm of cases that fall under its umbrella: cases in which an employee is injured when using a defective piece of equipment in a reasonable and foreseeable manner to complete his assigned task. A rule barring jury consideration of an employee's negligence is inapplicable to suits arising out of injuries sustained while an employee on a construction worksite is engaged in an assigned task. In so holding, we expressly affirm the rule announced in Kane and disapprove of the Appellate Division's analysis of the issue in this appeal to the extent it suggests that the Suter rule applies to bar the comparative negligence defense in all cases arising out of injuries sustained while an employee is engaged in a task on his employer's behalf.

A veritable catalog of industry standards and government regulations address the standard of care on various worksites and prescribe safety standards for specific activities, such as excavations to install utilities. For example, the Act requires an employer to "furnish a place of employment which [is] free from recognized hazards" likely to cause death or serious harm. 29 U.S.C.A. § 5654(a)(1). To that end, an employer performing excavation work is required to take measures to protect employees working in trenches deeper than five feet or in more shallow trenches when a "competent person" determines that there is an "indication" of a potential cave-in. Requirements for

Protective Systems, 29 C.F.R. § 1926.652(a) (2014). However, unlike the manufacturer of an industrial machine, who has an absolute duty to produce a machine that is safe to operate, a general contractor is expected to protect its workers from the myriad of potential dangers encountered on a construction site "so far as possible." 29 U.S.C.A. § 651(b). The vast discrepancy between the level of control asserted by the manufacturer of an industrial machine and that of a general contractor on a construction site mandates that the result of this case be different from that in Suter.

As noted in Kane, supra, employees bear some responsibility for their personal safety on a construction site. 278 N.J. Super. at 150. An employee is required to perform his or her assigned tasks in a manner which is reasonably safe under all of the circumstances associated with the task. The relevant inquiry in gauging the level of an employee's responsibility for his or her injuries is whether he or she failed to use the care of a reasonably prudent person under all of the circumstances, either in continuing to work in the face of a known risk or in the manner in which he or she proceeded in the face of that known risk. See McGrath, supra, 41 N.J. at 275. The issue of a plaintiff's negligence may only be submitted to the jury when the evidence adduced at trial suggests that a worker acted

27

unreasonably in the face of a known risk and that conduct somehow contributed to his or her injuries.

We recognize the continued validity of our statement in McGrath, supra, where we noted that a man or woman who must work to live is not necessarily negligent when he or she proceeds with an assigned task after learning of a hazard. 41 N.J. at 275. The demands of employment, and the reality of the power imbalance between employer and employee, may therefore be considered in determining whether an employee acted prudently in continuing to perform his or her assigned task in the face of a known risk. The fact that "plaintiff [was] a member of the workforce, with all the compulsions attendant to that status, is a factor which is subsumed in the jury's analysis of whether he acted prudently, and the jury may be so instructed." Kane, supra, 278 N.J. Super. at 150 (citing McGrath, supra, 41 N.J. at 275). The jury should also consider the effect of the plaintiff's expertise and training on his or her determination of whether to proceed with the assigned task and the manner in which to do so. Subsumed into that analysis, therefore, is whether the plaintiff unreasonably confronted a known risk and whether he had a "meaningful choice" in the manner in which he completed his assigned task.

B.

28

Notwithstanding the rule permitting an employee's negligence to be considered in a negligence action against a third party arising from a workplace accident, the trial judge properly rejected defendant's request for a comparative negligence charge. Here, the record is abundantly clear that plaintiff did not proceed unreasonably in the face of a known risk.

The record is devoid of any evidence that plaintiff knew the sewer trench was close to the previously excavated gas-line trench or that the neighboring trench was filled with sand. The record provides no evidence that plaintiff learned during his twenty years as a plumber that sand could flow from one trench to an adjacent one, causing the latter to collapse. The record demonstrates that plaintiff received no training about workplace safety from the general contractor or his employer. The record also demonstrates that plaintiff had no opportunity on that day to independently assess the stability of the trench.

Mario and plaintiff arrived at the worksite together. Mario operated the machine that dug the trench, and plaintiff entered the trench to connect successive sections of pipe. Notably, plaintiff's employer proceeded that day without using any protective devices. Mario was the "competent person" on the Warren jobsite, and he bore the duty of inspecting the excavation work to determine if a cave-in was likely.

29

Regardless of plaintiff's years of experience or actual knowledge about the danger of this particular excavation, the Act places the burden of deciding when and where to take protective measures squarely on Mario, the "competent person," and on the general contractor. Moreover, even if plaintiff knew that a cave-in was likely, his behavior must be evaluated against that of a reasonably prudent person in his exact circumstances, and that evaluation includes whether he had a meaningful choice in the manner in which he performed his assigned task on that day. In short, there is no evidence that plaintiff failed to act with the care of a reasonably prudent person in choosing to complete his assigned task on the day of the accident.

## V.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUDGE CUFF's opinion.

30

SUPREME COURT OF NEW JERSEY

NO. ___A-37___                           SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


ROLANDO FERNANDES,

　　　　Plaintiff-Respondent,

　　　　　　　v.

DAR DEVELOPMENT CORP. and DAR
CONSTRUCTION, INC.,

　　　　Defendants-Appellants.



DECIDED _____July 28, 2015_____
_____Chief Justice Rabner_____ PRESIDING
OPINION BY _____Judge Cuff (temporarily assigned)_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |