**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5428-16T3

CORA KERTON,

     Plaintiff-Appellant,

v.

SOCIETY HILL AT DROYERS POINT
CONDOMINIUM ASSOCIATION, and
LANDSCAPE MAINTENANCE
SERVICES,

     Defendants-Respondents.

_____

Argued September 13, 2018 - Decided October 1, 2018

Before Judges Fuentes, Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4425-15.

Luretha M. Stribling argued the cause for appellant.

Michael J. Jubanyik argued the cause for respondents (Reilly, Janiczek, McDevitt, Henrich & Cholden, PC; attorneys; Michael J. Jubanyik and Michelle B. Cappuccio, on the brief).

PER CURIAM

Plaintiff Cora Kerton appeals from a summary judgment dismissing her premises liability complaint against defendants Society Hill at Droyers Point Condominium Association and Landscape Maintenance Services. We affirm.

Viewed in the light most favorable to plaintiff, the essential facts are as follows. Plaintiff, a Jersey City police officer, was dispatched to a reported medical emergency at a home in the Droyers Point development on an early March afternoon in 2015. It was snowing, as it had been all day. An ambulance and another police car also responded. After helping to get the victim into the ambulance, plaintiff walked back to her patrol car ahead of the other officers. She slipped on the snow covered road and landed hard on her back, hitting her head on the street and suffering serious injuries.

Plaintiff filed suit, alleging her injuries resulted from defendants' negligence in removing the snow and ice from the streets of the Droyers Point development. Landscape Maintenance Services served as the condominium association's snow removal contractor at the time of the accident. The contract between defendants required snow removal to "commence when accumulations reach[] a depth of one (1) inch or more" and obligated Landscape Maintenance Services to make "every effort . . . to complete snow removal operations within

2

twenty-four (24) hours."  An attached schedule, which the parties agree

controls, with the exception of the plowing trigger, which they acknowledge is

irrelevant because whether one inch or two inches the trigger was met hours

before the accident, provides in pertinent part:

> A.  Plowing:
>
> 1.  Plowing of all paved black top roads shall
> begin automatically in accordance with this contract
> for snowfalls of two (2) inches or more.  Initial pass-
> through will be made to reasonably clear roadways to
> help enable cars to leave/arrive the community except
> in extreme conditions.
>
> 2.  After snowfall ceases, parking stalls, parking
> lots, mailboxes, fire hydrants, catch basins and
> dumpster areas will be cleared. . . .
>
> . . . .
>
> B.  Sidewalks:
>
> 1.  Sidewalks will be cleared after snowfall ceases
> and be completed no later than 8 hours thereafter
> except in extreme conditions of heavy accumulations
> or ice for two (2) inches or more.
>
> 2.  Full width of sidewalks to be cleared of snow
> except in extreme conditions of heavy accumulations
> or ice.
>
> 3.  Access from parking stalls to sidewalks must
> be provided.  If snow is pushed up against sides, path
> will be cut through.

The parties agree plaintiff fell shortly after 3 p.m., when about six inches of snow had already fallen, and that close to another inch would fall before the snow finally ended sometime in the evening. They disagree over whether the street on which plaintiff fell, one of twenty-five streets in the development, had been plowed at the time of the accident. Employees of Landscape Maintenance Services testified at deposition the contractor had a plow crew on site conducting the "initial pass-through" throughout the day. It presented invoices and time records on the motion it claimed corroborated the contractor's efforts. Plaintiff and her fellow officers testified the snow was over their boots and they did not see any plows while they were there.

Plaintiff's snow removal expert submitted a report stating "[i]t appear[ed] to [him] that there was at least one attempt to plow the roadways to allow for emergency services access," but the contractor "did not have enough equipment to keep up with this moderate winter storm event." He opined that Landscape Maintenance Services "violated the standards and practices of snow and ice maintenance" by failing "to have sufficient equipment at the site to be able to achieve timely snow and ice removal for the entire development."

After hearing argument on two different dates necessitated by defendants' failure to initially address plaintiff's expert report, the court

4

granted summary judgment dismissing the complaint. The court found the testimony of the officers that there was snow and ice in the road and they did not see plows while they were in the development was not sufficient to put in issue defendants' proofs that a crew was on site and plowing the roads on the day of the accident. Noting plaintiff did not dispute that it was still snowing when she fell, the court found Landscape Maintenance Services "did what the contract said they were supposed to do. They kept the streets open for emergency vehicles." The court found the association had no duty to do more.

The court further determined plaintiff's expert report to be a net opinion, finding no standard by which to measure his assertion that the contractor lacked enough equipment to keep up with the storm and no basis for his claim that Landscape Maintenance Services "was remiss for failing to make sure that all snow and potentially icy areas were addressed . . . while it was still snowing." The court denied plaintiff's motion for reconsideration.

On appeal, plaintiff contends the court erred in ruling the report of her expert constituted a net opinion, misinterpreted the contract and applied the wrong standard. We disagree.

We review summary judgment using the same standard that governs the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012).

A-5428-16T3

Thus we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). In considering application of the law to the facts adduced on the motion, our review is de novo without deference to any interpretive conclusions we believe mistaken. Nicholas v. Mynster, 213 N.J. 463, 478 (2013); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Applying those principles here, we agree with the trial court that summary judgment was appropriate.

In order to establish defendants' negligence, plaintiff needed to show (1) they owed plaintiff a duty of care; (2) they breached that duty; (3) actual and proximate causation; and (4) damages. Fernandes v. DAR Dev. Corp., 222 N.J. 390, 403-04 (2015). The motion record makes clear that the road on which plaintiff fell was a common element of the condominium complex, thus making the association responsible for its maintenance. See Qian v. Toll Bros. Inc., 223 N.J. 124, 141 (2015). Because this is a premises liability case and the parties agree as to plaintiff's status as an invitee, see Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 45-46 (2012), the association owed plaintiff a duty to

6

exercise reasonable care to guard against "a dangerous condition on property within the ambit of the common elements." McDaid v. Aztec W. Condo. Ass'n, 234 N.J. 130, 141-42 (2018); Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993). "A condominium association's duty to keep the common elements reasonably safe is non-delegable." McDaid, 234 N.J. at 142 (citing N.J.A.C. 5:10-4.1(a)).

Yet plaintiff has not cited any case to us, and our own research has not revealed one, imposing a duty on a condominium association to remove snow from a roadway in the midst of a snow storm in order to make it safe for pedestrians. Roadways, of course, are ordinarily intended for vehicular traffic, not pedestrians. See Polzo v. Cty. of Essex, 209 N.J. 51, 70-71 (2012). Our Supreme Court has made clear the law imposes a duty on the association to keep its private sidewalks, which are intended for pedestrians, reasonably safe. Qian, 223 N.J. at 142. That obligation may, as with the duty on a commercial property owner, "require removal of snow or ice or reduction of the risk, depending upon the circumstances." Id. at 136 (quoting Mirza v. Filmore Corp., 92 N.J. 390, 395-96 (1983)). But we know of no case imposing such a duty, even on a commercial landowner, while snow continues to fall.

7

Landscape Maintenance Services' duty to plaintiff springs from its contract with the association. See Aronsohn v. Mandara, 98 N.J. 92, 105 (1984) ("Under well-established principles a contractor has a duty to persons, other than the one with whom the contractor has made the contract, to carry out his undertaken work in a careful and prudent manner, and he may be responsible to third persons for their personal injuries and property damages proximately caused by his failure to exercise that care."). Its duty to plaintiff is defined "by the nature and scope of its contractual undertaking." McDaid, 234 N.J. at 142 (citation omitted).

Having reviewed the contract, we agree with the motion judge that it requires Landscape Maintenance Services to begin plowing all the "paved black top roads" when the accumulation trigger is reached, but also unambiguously limits its obligation, while snow continued to fall, to an "[i]nitial pass-through . . . made to reasonably clear roadways to help enable cars to leave/arrive the community except in extreme conditions."[1] The snow removal contractor's obligation under the contract to clear the sidewalks to

---

[1] Although the judge characterized Landscape Maintenance Services' obligation under the contract to keep "the streets open for emergency vehicles," instead of for cars generally, the inconsequential error did not affect his otherwise sound analysis.

8

make them safe for pedestrians did not begin until the snow had stopped, consistent with the association handbook in the record advising unit owners that "[s]now removal from sidewalks does not normally commence until the snowfall has ended."

Having correctly defined the duty at the time of plaintiff's accident as one limited to keeping the roadways reasonably clear to permit cars to enter and leave the development, the court was also correct that the undisputed facts made apparent the duty was discharged. The record makes clear that an ambulance and two police cars were able to both enter and leave the development with little if any difficulty while the snow continued. More direct proof would be difficult to come by.

We reject any notion that defendants had an implied duty to make the roadways safe for pedestrians who would be getting into and out of the cars coming and going out of the development. The association handbook and the snow removal contract both make plain that sidewalks, mailboxes and parking stalls would not begin to be cleared until the snow ended. The court was correct to reject an implied obligation on the part of defendants to make the roadway safe for pedestrians, which was directly contrary to its express obligation to clear the sidewalks only after the snow ended. Pollack v. Quick

Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017) (noting "[w]here the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language.").

Finally, we agree with the trial court's conclusion that plaintiff's expert report was not sufficient to stave off summary judgment to defendants. Although a court faced with an evidentiary issue in the context of a summary judgment motion ordinarily decides the evidence question first, see Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010), here it was necessary to define the duty owed to plaintiff in order to determine whether the opinions offered by the expert were relevant to the issues in dispute, even assuming they were admissible.

Because the contract only required the contractor, while it remained snowing, to keep the roadways reasonably clear to permit cars to enter and leave the development and the proofs make readily apparent it did so, plaintiff's expert's opinion that the snow removal contractor "was remiss for failing to make sure that all snow and potentially icy areas were addressed . . . while it was still snowing" and lacked the equipment to keep up with the storm was without factual basis in the record. See Townsend v. Pierre, 221 N.J. 36, 55 (2015).

Plaintiff's remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION