**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1913-17T3

GUSTAVO ROBAYO,

    Plaintiff-Appellant,

v.

ANTHONY A. ROSSO and
MEADOWLANDS
CONTRACTING, LLC,

    Defendants-Respondents,

and

HANOVER INSURANCE
GROUP,

    Defendant.

_____

Submitted December 18, 2018 – Decided January 14, 2019

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1735-16.

Robert M. Mayerovic, attorney for appellant.

Law Offices of Terkowitz & Hermesmann, attorneys for respondents (Craig M. Terkowitz, on the brief).

PER CURIAM

In this property damage action, plaintiff Gustavo Robayo appeals from the Law Division's September 29, 2017 order granting defendants Anthony A. Rosso and Meadowlands Contracting, LLC, summary judgment and the court's December 1, 2017 order denying reconsideration. We affirm.

Plaintiff is the sole shareholder of Ex-Titanic Corp., which owns a 166-year-old commercial building consisting of three units at 3125-3129 Central Avenue in Union City. In approximately 2004, plaintiff had the roof repaired on the portion of the building above 3129 Central Avenue, as the building was old and in "bad shape." On March 31, 2009, Ex-Titanic leased the property located at 3129 Central Avenue to Katyta's Laundromat, then-owned by Mario Silva Mejia (Silva) and Mary C. Vereau Rodriguez (Rodriguez).

Before Silva's tenancy, the building was used as a restaurant and required renovations to convert it into a laundromat. The lease provided that "any licenses and permits [are the] tenant['s] responsibility" and "any alterations" to the building must be performed by a licensed company "[at] the tenant['s] cost," with plaintiff retaining the right to "control[]" and "approve" any modification.

2

A-1913-17T3

In Rosso's certification submitted in support of defendants' summary judgment motion, he stated that Anthony Dominguez, an electrical contractor hired by Silva, approached him to assess his interest in acting as general contractor for the remodeling work at the laundromat. Rosso certified that he expressed interest and anticipated being awarded the contract. Accordingly, he submitted a construction permit application with Union City and paid the permit fee of approximately $150. The permit request and accompanying contractor registration form listed Meadowlands as the general contractor. However, it was undisputed that Meadowlands "never obtained the contract for th[e] job and never did any work on the premises."

Silva provided deposition testimony that he owned Mecorp, Inc. (Mecorp), a construction company, which completed the renovation work, including the installation of dryer exhaust vents on the roof. Further, he stated that he paid Dominguez for completing the electrical work. With regard to the construction permit application, Silva stated that he was not involved in obtaining the permit. He added that he did not know Rosso, never paid Meadowlands, and Meadowlands did not perform any of the renovation work at the laundromat.

A-1913-17T3

After the construction was complete, Union City issued a certificate of occupancy to Silva on June 11, 2010, and Katyta's Laundromat opened in October 2010. On March 25, 2013, Katyta's Laundromat was evicted for non-payment of rent. In his deposition, plaintiff testified that after the eviction, he observed water infiltrating from the roof into the laundromat and concluded the water leakage was a result of the improper installation of the dryer exhaust vents.

Plaintiff sued Rosso, Meadowlands, Hanover Insurance Group, and John Doe defendants[1] and alleged that defendants negligently "drilled [five] wrong duct holes . . . on the rooftop of [the] laundromat . . . causing leaks and damage[]" to the building. For reasons not explained in the record, plaintiff did not sue Silva, Rodriguez, Katyta's Laundromat, or Mecorp. On August 2, 2016, Rosso and Meadowlands filed an answer denying plaintiff's allegations and on August 29, 2017, moved for summary judgment.

The court granted defendants' motion on September 29, 2017, and entered its decision on the record that day. In its oral decision, the court concluded that because it was "established unequivocally that [defendants] didn't do any work [at the laundromat] . . . they cannot be held [liable] in tort law, . . . for the

---

[1] Hanover Insurance Group was dismissed by a June 24, 2016 order and is not involved in this appeal.

A-1913-17T3

damage." The court added that it "can't impose on them a responsibility for the faulty workmanship simply because [Meadowlands'] name[] [is] on the permit." On December 1, 2017, the court denied plaintiff's motion for reconsideration. This appeal followed.

On appeal, plaintiff argues the judge committed error in granting defendants summary judgment because the court failed to consider adequately all the factors necessary to determine whether Rosso or Meadowlands, as general contractors, should be liable for the negligent installation of the exhaust vents. We disagree.

We apply the same standard as the trial court when reviewing a grant of summary judgment. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). Pursuant to Rule 4:46-2(c), a court is required to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." If there are no genuine and material factual questions, we then determine whether the trial court made a correct ruling on the law. Walker v. Alt. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987).

To prevail on a negligence claim, the plaintiff must demonstrate: "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Dev. Corp., Inc., 222 N.J. 390, 403-04 (2015). The "plaintiff bears the burden of establishing those elements 'by some competent proof.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).

"It is well-settled that when a person engages an independent contractor to do work that is not itself a nuisance, he is not vicariously liable for the negligent acts of the contractor in the performance of the contract." Puckrein v. ATI Transp., Inc., 186 N.J. 563, 574 (2006). However, there are three exceptions to the general rule that principals are not liable for the negligent acts of the independent contractors they hire: (1) "where the [principal] retains control of the manner and means of doing the work which is subject to the contract;" (2) "where [the principal] engages an incompetent contractor;" or (3) "where . . . the activity contracted for constitutes a nuisance per se." Majestic Realty Assocs. v. Toti Contracting Co., 30 N.J. 425, 431 (1959).

Here, plaintiff concedes that Rosso and Meadowlands performed none of the construction work and did not exercise any control over the "manner and

means" in which the work was performed by Silva and Mecorp. Rather, plaintiff relies on the second and third exceptions in arguing the court committed error in finding defendants not liable for the actions of Silva, Mecorp, and any other unapproved contractor.

Specifically, plaintiff claims that because Rosso obtained the initial construction permit and listed Meadowlands as the general contractor, he "allowed for an incompetent, unauthorized, and unlicensed person to perform regulated work" on plaintiff's property and further maintains that the "practice by which contractors lend out to others the right to use their permit" constitutes a clear nuisance. Based on the summary judgment record, the court correctly rejected plaintiff's claims.

First, as plaintiff conceded, Rosso never engaged a contractor to perform the renovation work. Second, there is no support in the record for plaintiff's claim that Rosso "lent his license" or "sold use of the permit for cash."[2] Instead,

---

[2] We acknowledge that the trial judge commented it was his "impression" that defendants "probably" lent out the construction permit and that, based on his experience as a practicing attorney, he believed defendants "fraudulently obtained the building permit on behalf of another unlicensed contractor." The court's statements are not Rule 1:7-4 findings of fact, as they are unsupported by the motion record.

the competent evidence before the court supports the conclusion that Rosso, when approached by Dominguez, and with the belief Meadowlands would ultimately be named the general contractor, obtained the construction permit and took no direct or indirect actions with respect to the project thereafter.[3]

Third, the construction activity at issue here – installing exhaust ducts and the attendant drilling of holes in a roof – are not inherently dangerous activities that could be considered a nuisance per se and  which would warrant the imposition of liability upon defendants.  Indeed, nothing in the record suggests the construction work was uncommon, involved a high risk of harm, or required any special precaution.  Majestic Realty Assocs., Inc., 30 N.J. at 435-36.

Fourth, plaintiff incorrectly claims that the court's decision "provide[s] a liability shield for damages directly attributable to the fraud" and "undermine[s] the regulatory scheme of the Department of Community Affairs [(DCA)] . . . ." As we have noted, the court's "finding" that defendants acted fraudulently is unsupported by the record.  And, although we acknowledge that the State Uniform Construction Code Act, N.J.S.A. 52:27D-119 to -141, requires the

---

[3] We also note that plaintiff failed to establish, by expert testimony or otherwise, that any independent contractor was unskilled or incompetent to perform the remodeling work.  In fact, after construction was completed, Union City issued a certificate of occupancy.

A-1913-17T3

issuance of a permit for the construction or alteration of any building or structure, see N.J.S.A. 52:27D-130, there is no competent evidence in the record, expert or otherwise, to support plaintiff's claim that defendants' failure to withdraw the October 7, 2009 construction permit with Union City caused plaintiff's damages.

Finally, defendants claim, as they did in the trial court, that plaintiff failed to present any expert testimony to support his claim that the water infiltration was caused by defendants' negligence. We agree. Although the court did not reach this issue, we conclude that the lack of expert proofs was fatal to plaintiff's claims and provides an independent basis to affirm.

"In general, expert testimony is required when 'a subject is so esoteric that jurors of common judgment and experience cannot form a valid conclusion.'" Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 450 (1993). If a jury's determination is a "difficult, intricate, and sophisticated . . . task," a party must generally "secure the assistance of appropriate experts." Torres v. Schripps, Inc., 342 N.J. Super. 419, 435-36 (App. Div. 2001).

Here, plaintiff alleged that his damages were caused by defendants' negligent installation of exhaust vents. However, as plaintiff admitted, the property was a 164-year-old building in 2016, was in "bad shape," and had

undergone prior roof repairs.  We conclude that expert testimony was required to determine the cause of the water damage.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1913-17T3