**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2214-22

KATTAYOUN KORDY,

    Plaintiff-Appellant,

v.

LIV BREADS HOLDINGS,
LLC, and LIV BREADS
MILLBURN,

    Defendants-Respondents.

_____

Submitted May 15, 2024 – Decided July 3, 2024

Before Judges Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2143-21.

Lord, Korbin, Alvarez & Fattell, LLC, attorneys for appellant (Robert A. Lord, attorney, of counsel; Paula C. Nunes, on the briefs).

Law Office of Frank A. Viscomi, attorneys for respondents (Lynn Hershkovits-Goldberg, on the brief).

PER CURIAM

Plaintiff Kattayoun Kordy appeals a February 17, 2023 Law Division order entered by Judge Annette Scoca granting defendants Liv Breads Holdings, LLC and Livbreads Millburn's motion for summary judgment dismissing plaintiff's personal injury complaint. This case arises from an incident during which plaintiff suffered second-degree burns to her hand when she spilled hot coffee she purchased at defendant Liv Breads' store. Plaintiff claims the lid on one of the coffee cups "popped off" while she was walking to her car. Judge Scoca ruled plaintiff did not present an expert report establishing the standard of care or its breach through any industry standards or customs. After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. On July 30, 2020, plaintiff purchased hot coffee and other items from defendants' store. Because of the COVID-19 pandemic, customers were not allowed inside the store. Defendants did not have coffee carriers because of COVID-19-related supply chain shortages. Plaintiff picked her order up from a table outside the store's vestibule. Plaintiff testified, she

> put the pastry bag handle through [her] left wrist all the
> way down to the elbow part . . . then [she] picked up

2

the cold drink and put it in [her] right armpit against [her] chest . . . [She] put the cold drink between [her] upper arm and side chest. . . .

. . .

Then [she] had the two hands free for the hot drinks so [she] picked up the, one of the hot [coffee cups] on [her] left hand with [her] palm up . . . and [she] had the pastry bag here, [her] coffee here in [her] left hand and then the right hand [she] picked up the other [hot coffee cup] with [her] other drink.

During her deposition, plaintiff was asked, "[b]efore you picked up the coffee cups or the coffee containers did you check to see if the lid was secure?" She answered, "[n]o, I didn't, I didn't fiddle around with the lids."

Plaintiff's car was about ten to fifteen steps away from the pick-up table. As she turned around from the table, she took "a few steps forward [and] the lid on the left [hot coffee cup] popped open and the coffee spilled all over [her] left forearm and wrist and some of the hot coffee splashed onto [her] right thumb." She did not drop any items. Instead, she "put everything down in the middle of the sidewalk so [she] put the left [hot coffee cup] down, [she] put the right [hot coffee cup] down, [she] moved the ice drink from [her] arm down and [she] took the pastry bag off and then [she] went to the front, . . . to the lady to ask for napkins and cold water immediately." After she got the cold water and napkins, plaintiff

A-2214-22

started rinsing the coffee off of [her] skin and [the employee who brought her the supplies] felt bad [she] guess[ed] and he [said] I should have walked you to your car and then he offered to remake the drink that was spilled and [she] think[s] then he went back inside to make that drink and [she] was still outside [o]n the sidewalk cleaning the coffee off of [her] arms.

On March 17, 2021, plaintiff filed a complaint alleging defendants "carelessly and negligently did not properly close a cup of a hot coffee thereby causing the hot coffee to spill on plaintiff's hand causing her to suffer injuries." Plaintiff alleged that as a "direct and proximate result" of defendants' negligence, she "suffered a severe burn causing considerable pain, anguish, scarring, suffering, she incurred medical bills and physical distress of both a temporary and permanent nature, shock, loss of wages and other special damages."

The parties conducted depositions and exchanged paper discovery. Neither party served an expert report. After the discovery period ended, defendants moved for summary judgment "because the plaintiff failed to establish a prima facie case of negligence on behalf of the defendant[s] and then secondly . . . or in the alternative it should be dismissed because there's no [liability] expert report."

On February 17, 2023, Judge Scoca heard oral argument on defendants' motion for summary judgment. Defendants argued:

> I don't even know what plaintiff's claim of negligence is, but . . . from reviewing again her deposition testimony [it] is that the coffee cup was not secured properly which caused it to spill. And what plaintiff has presented in this case is no evidence that that was the case.
>
> She went to Liv [Breads] during the height of the pandemic. . . . There was a supply chain—chain shortage. She was not given a carrier. . . . She chose to carry three . . . coffee cups, one was cold coffee, two [were] hot coffee, plus the two croissants on her own with her hands from the table to the car, and in route the top opened and spilled on her.
>
> Now, there's no evidence . . . to support that the top was not secure. She did not check the top after she picked up the coffee. . . . She picked it up, she carried it, and then it spilled on her.
>
> So that's the case, Your Honor. And, based on that alone, there's insufficient evidence of negligence against the defendant[s].

Plaintiff responded:

> [T]he claim is based on the temperature of the coffee,[1] but also on the failure to provide a number of

---

[1] On appeal, plaintiff does not argue the temperature of the coffee was excessive. Plaintiff concedes in her reply brief, "[e]veryone understands that hot coffee can burn the skin. How hot is too hot? That's not really the issue here. All hot coffee is meant to be served boiling hot."

safety features, such as double-checking the lid. The testimony of the defendants on the one hand suggested they double-checked whether the lid was secured. On the other hand, they contradicted themselves, two different witnesses testifying in two different manners concerning whether the lids were checked. Apparently, chances are they were not double-checked.

It's not on the plaintiff to check whether the lid is on securely. It's on the defendant[s] to check whether it's on securely.

The plaintiff requested a tray to bring the coffees and the croissants to her vehicle. She wasn't provided with a tray. . . .

She had three drinks with her and the croissants. . . . [B]asically, the lid popped open, and that's what happened. That's how hot coffee spilled on her hands.

Judge Scoca confirmed that plaintiff did not retain experts to establish either liability or damages. The judge questioned,

how do you know that, when she's not walking . . . if I have multiple things in my hands and I have something under my arms, it affects the way you're carrying even what's in your hands . . . without an expert to explain exactly what happened, you're basically—I guess your argument then . . . is res ipsa, the thing speaks for itself.

Plaintiff's counsel responded:

Pretty much, I mean, because she—she doesn't walk for a long distance, she takes one or two steps, and she doesn't testify that she began to lose balance, and nobody saw that she begins to lose balance. It's not a

6

question of I'm carrying too many things. It's a question of the lid suddenly pops open and it happens—

. . . .

In this case, she's holding a cup and suddenly it pops open, suggesting that the lid is not on securely. And, since it is hot coffee, you have the problem that it spills on her.

And the fact that it burns her, you don't need an expert. [O]n the one hand, she has the treatment records, so it establishes the burn. [I]t just so happens that the plaintiff herself is a physician and can testify about the treatment she administers to herself.

At the conclusion of the hearing, Judge Scoca rendered an oral opinion, concluding that plaintiff,

failed to present facts that would lead a reasonable factfinder to conclude that defendant[s] breached a duty to plaintiff. The facts properly within the record do not reflect that the lid on the coffee had not been fastened . . . properly. And that's the whole issue here. We don't know if the lid had been . . . fastened properly, and that's why we need an expert.

The facts properly within the record do not reflect that the lid on the coffee had not been fastened properly and that plaintiff[] also have not presented this [c]ourt with any industry standards . . . or customs that were not observed by the defendants. Without, one cannot conclude that a duty was breached.

Negligence cannot simply be presumed—again, this is not a . . . res ipsa case, because the cup was in the control of the plaintiff.

7

The judge also ruled that plaintiff "cannot act as her own medical expert, as she has not submitted an expert report that she would be relying on as required by N.J.R.E. 703." Finding no disputed facts, Judge Scoca granted defendants' summary judgment motion and dismissed plaintiff's complaint with prejudice.

This appeal follows. Plaintiff contends that summary judgment was improperly granted because genuine issues of material fact are disputed and, thus, need to be decided by a jury factfinder. Plaintiff also contends expert testimony is not needed because the negligence and damages issues are not beyond the ken of the average juror.

We preface our analysis by acknowledging the legal principles governing this appeal. We review a trial court's grant or denial of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[ ] all legitimate inferences from the facts in favor of the non-moving

party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alterations in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). The key inquiry is whether the evidence presented, when viewed in the light most favorable to the non-moving party, "[is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "[A] non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Id. at 529.

To sustain a negligence claim, a plaintiff must demonstrate: (1) a duty of care, (2) that the duty has been breached, (3) proximate causation, and (4) injury. Townsend v. Pierre, 221 N.J. 36, 51 (2015). The plaintiff bears the burden of proving negligence, see Reichert v. Vegholm, 366 N.J. Super. 209, 214 (App. Div. 2004), and "must prove that unreasonable acts or omissions by the defendant proximately caused his or her injuries." Underhill v. Borough of Caldwell, 463 N.J. Super. 548, 554 (App. Div. 2020). "To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others." New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 377-78 (quoting Fernandes v. DAR Dev. Corp., 222 N.J. 390, 404 (2015)).

The doctrine of res ipsa loquitur permits an inference of negligence establishing a prima facie case. Jerista v. Murray, 185 N.J. 175, 191-92 (2005). To invoke that doctrine, a plaintiff must establish:  "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality [causing the injury] was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect."  Szalontai v. Yazbo's Sports Cafe, 183 N.J. 386, 398 (2005) (alteration in original) (quoting Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288 (1984)).

Applying these general principles to the record before us, we focus on whether plaintiff is required to present evidence relating to the standard of care that defendants owed to her.  "In most negligence cases, the plaintiff is not required to establish the applicable standard of care."  N v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citing Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)).  In those instances, "'[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were.  The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken.'"  Id. at 406-07 (alterations in original) (quoting

10

Sanzari, 34 N.J. at 134). "Such cases involve facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'" Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" Ibid. (alterations in original) (citations omitted); see N.J.R.E. 702.

"[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis, 219 N.J. at 407 (alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)). In cases where "the factfinder would not be expected to have sufficient knowledge or experience[,]" expert testimony is needed because the jury "would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).

Expert testimony has been required to establish an accepted standard of care with regard to: "ordinary dental or medical malpractice," Sanzari, 34 N.J. at 134-35; "the responsibilities and functions of real-estate brokers with respect to open-house tours," Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 444 (1993); "the safe conduct of a funeral procession," Giantonnio, 291 N.J. Super. at 44; "applying pertinent skydiving guidelines," Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215 (App. Div. 2002); the "repair and inspection" of automobile engines, Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 237 (App. Div. 2012); "the inspection of fire sprinklers by qualified contractors," Davis, 219 N.J. at 408; and the duties of a licensed nurse when "a patient dislodges [their] [medical] tube and refuses its reinsertion," Cowley v. Virtua Health Sys., 242 N.J. 1, 8 (2020).

In contrast, our courts have held expert testimony is not required to establish the appropriate standard of care for explaining: "the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material[,]" Scully v. Fitzgerald, 179 N.J. 114, 127 (2004); whether an attorney in a malpractice suit should have "briefed an issue[,]" "report[ed] . . . settlement discussion[s] accurately[,]" or "recommend[ed] a disposition of the case" after settlement discussions, Sommers v. McKinney, 287 N.J. Super. 1, 12 (App. Div.

1996); or the "risk involved in [a chiropractor] repeating the further neck adjustment[s]" after the chiropractor knew the patient became uncharacteristically dizzy and unwell after treatment, Klimko v. Rose, 84 N.J. 496, 505 (1980).

We are satisfied the facts alleged in the present matter require plaintiff to present evidence to establish the standards by which defendants' actions or alleged omissions are to be judged. See Fernandes, 222 N.J. at 404-05 ("In some cases, however, the collective experience of the jury is not sufficient to measure the defendant's conduct. In those cases, the plaintiff must establish the standard of care governing the defendant's conduct and the deviation from that standard through reliable expert testimony.").

We agree with the trial court that plaintiff was obliged to present expert testimony regarding the proper operation of coffee shops and specifically with regard to affixing coffee lids and checking to make certain lids are properly fastened before placing the cup on a pick-up counter. Such expert testimony is needed to explain, for example, industry standards, rules, and applicable regulations if any. Nor has plaintiff presented evidence of industry standards for take-out serving of hot beverages during the pandemic, accounting for supply-chain shortages in beverage carriers and trays. We reiterate and stress

13

that "[i]t is well-settled law that a recovery for damages cannot be had merely upon proof of the happening of an accident. Negligence is never presumed; it, or the circumstantial basis for the inference of it, must be established by competent proof presented by plaintiff." Mockler v. Russman, 102 N.J. Super. 582, 588 (App. Div. 1968).

We add plaintiff did not present any evidence establishing that defendants did not securely fasten the lid on her cup. As we have noted, plaintiff acknowledged she did not check whether the lid was securely fastened before the spill occurred. The trial court correctly rejected the doctrine of res ipsa loquitor, noting defendants were not in exclusive control of the coffee cup when the spill occurred. Rather, the undisputed record shows plaintiff was carrying the cup along with other items she had purchased from defendants.

In sum, because plaintiff did not provide any expert report concerning liability, she did not establish a genuine issue of fact as to defendants' duty of care, breach of that duty, and proximate cause for the spill. See Brill, 142 N.J. at 540. That justifies the trial court's grant of summary judgment dismissal in defendants' favor.

In light of our decision, we need not address the judge's decision on the issue of damages. To the extent we have not specifically addressed them, any

14

additional contentions raised by plaintiff lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION